## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARK F. BEVAN, M.D.**, in his individual
capacity and as a managing member of **TRC-
FOUR CORNERS DIALYSIS CLINICS, LLC**,
a New Mexico limited liability company,

    Plaintiff,

v.               Civ. No. 08-281 MCA/CG

**DAVITA, INC.**, a Delaware corporation,
f/k/a **TOTAL RENAL CARE, INC.**,

    Defendant.

## ORDER TO SHOW CAUSE

  **THIS MATTER** is before the Court on Plaintiff's *Motion For Confirmation Of Arbitration Award* [Doc 56] and Defendant's *Motion To Confirm And Enforce Arbitration Award* [Doc 57]. As will be set forth in more detail below, the parties to this action have filed separate motions, each requesting confirmation of the award entered by the Arbitrator on July 26, 2010, but each setting forth different interpretations of the terms of the award. For the reasons stated below, the parties are ordered to show cause why this matter should not be remanded to the Arbitrator for clarification.

  Plaintiff, Dr. Bevan, and Defendant, DaVita, Inc. (DaVita), have been joint venture partners since 1999, providing dialysis services to the Four Corners area. The parties own seven dialysis clinics, all of which are managed by DaVita. At some point during the relationship, a dispute arose as to ownership and control of the venture, the facilities, and

the clinics. A law suit was filed, which was removed to this Court in March 2008. [Doc 1] On January 23, 2009, this Court entered a *Memorandum Opinion And Order*, granting Dr. Bevan's motion to compel arbitration. [Doc 37]

The case before this Court was stayed, and the parties pursued arbitration, which took place in June 2010. The Arbitrator issued his written decision as to liability on July 26, 2010 and found primarily for Dr. Bevan. The decision provided for a financial award to Dr. Bevan, as well as equitable remedies. The Arbitrator followed the liability decision with a further award of attorney fees, issued on September 23, 2010.

During the time that the arbitration was pending and afterward, the parties filed joint status reports, apprising this Court of the parties' progress. In December 2010, the parties informed the Court that the Arbitrator had issued his awards, and that a motion for confirmation of the award "may" be forthcoming. A similar report was filed in February 2011. On March 17, 2011, the Court ordered the parties to file either a motion to confirm the award or "a motion to indicate the next course of action to be taken in the matter," no later than March 31, 2011. On that date, both parties filed separate motions to confirm the arbitration award and provided diverging rationales for confirmation.

The primary source of contention appears to be whether Dr. Bevan should receive the 44% share of Durango Dialysis Center, which was indisputably awarded by the Arbitrator, subject to the terms and restrictions set forth in the Operating Agreement. The Operating Agreement provides for "the terms and conditions governing the formation, structure, governance, operation and management of the Company . . . ." [Doc 56-1 at 2]

DaVita maintains that the Arbitrator intended for Dr. Bevan to accept a 44% interest in the Durango facility "under the current agreement governing operation and management of the facility." [Doc 57 at 9]  For support, DaVita points to the *Decision Of The Arbitrator*, in which the Arbitrator exercised his "equitable powers to limit the interest which Dr. Bevan may obtain in the Durango acute facility to no more than 44% of the total, which maintains Dr. Saddler's 5% interest and maintains DaVita's control." [Doc 56-2 at 5]  The Arbitrator continued to state that he was "convinced that such preservation as to the governance of this facility is in the interest of the patients in the Durango chronic facility." [Id.]

In order to comply with the Arbitrator's decision, DaVita prepared a "Transfer Agreement," which purported to memorialize the transfer of the 44% interest.  The proposed Transfer Agreement sets forth terms for the transfer of interest, the "ownership of the entire record and beneficial interest of the Company," limitations on Dr. Bevan's rights, and a "Joinder To Operating Agreement."  [Doc 57-3 at 2-7]  The Joinder to Operating Agreement requires Dr. Bevan to agree and guarantee that he will "abide by the terms of and conditions of the [Operating] Agreement. . . ." [Id. at 7]

In a letter to DaVita concerning the proposed Transfer Agreement, Dr. Bevan disagreed with DaVita's interpretation of the Arbitrator's decision.  Dr. Bevan stated that "[t]he Arbitrator did not order Dr. Bevan to execute a joinder to the Durango Dialysis Clinic, LLC Agreement to effect this transfer [of interest because the] Durango Operating Agreement contains provisions which are incompatible with Dr. Bevan's receipt of his

interest through DaVita." [Doc 57-3 at 2]  Dr. Bevan continued in the letter to specifically object to the application of nine specific sections of the Operating Agreement to his 44% interest because he was "not bound under the terms of the Arbitrator's decision by the terms of the Durango Operating Agreement . . . ." [Id. at 3-4]

In his *Motion For Confirmation Of Arbitration Award*, Dr. Bevan does not address this dispute.  [Doc 56]  He simply asks for the Court to confirm the arbitration award: "Wherefore, Plaintiff, Mark F. Bevan, M.D., seeks an order confirming the arbitration award and entering judgment in conformity with that order. . . ." [Id. at 6]  DaVita, however, in its *Motion To Confirm And Enforce Arbitration Award*, sets forth the disagreement between the parties regarding the incorporation of the Operating Agreement and the question of the limitation of Dr. Bevan's rights.  [Doc 57]  DaVita asks this Court to "enforce the Arbitrator's Award by ordering Dr. Bevan to accept DaVita's transfer of shares in Durango subject to the terms of the Durango Operating Agreement."  [Id. at 10]  Thus, the parties come before the Court, each requesting confirmation of the arbitration award, but setting forth different interpretations of that same award.

The Federal Arbitration Act (FAA) carries a "statutory policy of rapid and unobstructed enforcement of arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).  Section 9 of the FAA permits the district court to confirm an arbitration award if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9.  The parties face two jurisdictional hurdles before this Court may enforce an

arbitration award.  See P&P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 866 (10th Cir. 1999).  First, the parties must demonstrate subject matter jurisdiction independent from the FAA.  Id.  There is no dispute that there is complete diversity of citizenship between the parties who are currently before the Court and that the amount in controversy exceeds $75,000.  Accordingly, this Court has diversity jurisdiction over the matter.

Second, this Court must have authority under the FAA, Section 9 specifically, to enforce the arbitration award.  Id.  "[A] district court has no power to confirm an arbitration award under § 9 of the FAA unless the parties have agreed, explicitly or implicitly, that any eventual arbitration award shall be subject to judicial confirmation."  P& P Indus., Inc., 179 F.3d at 866.  Again, there is no dispute that the Operating Agreement between the parties includes the following clause:  "The party in whose favor the award is made may apply to any court with jurisdiction for confirmation and entry of judgment in conformity with the award."  [Doc 56-1 at 13]  Accordingly, this Court has jurisdiction to confirm the arbitration award.

Both parties have requested that this Court confirm the Arbitrator's award. Nevertheless, the parties cannot agree about the intent underlying the award and how to apply its specific terms.  In cases such as the present, where an ambiguity exists as to the award's terms, "[c]ourts have uniformly stated that a remand to the arbitration panel is appropriate."  U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830-31 (10th Cir. 2005) (internal quotation marks and citation omitted) (Nukem, Inc.); Thomas H. Oehmke, Commercial Arbitration, § 126:1 *Post-award clarification, correction or modification*

(November 2010) ("Even though the FAA is silent about remanding an arbitration award for clarification (as opposed to modification or correction), courts have seen such an option as the exercise of their equitable powers."). Remand avoids the danger that this Court will misinterpret the award and that as a corollary, the parties would not receive "the award for which they bargain." Nukem, Inc. 400 F.3d at 831 (internal quotation marks and citation omitted). Put succinctly, "for a court to engage in guesswork as to the meaning and application of an ambiguous arbitration award is inconsistent not only with federal policy, but also with the parties' own agreement to submit their dispute to arbitration." Id. (internal quotation marks and citation omitted).

In the Nukem, Inc. case, the arbitration award was silent as to the definition and valuation of certain rights, the intended duration of and costs associated with the awarded constructive trust, and the question of prejudgment interest. Id. at 836. As a result, the district court was required to guess at the value of the constructive trust. Id. Our Circuit determined that despite some factors weighing against remand to the arbitration panel, such remand was "necessary, despite the long and tortured procedural history of this case." Id. In the present case, it is not clear from the decision whether the Arbitrator intended for Dr. Bevan to take his 44% interest in the Durango facility subject to the terms and limitations of the Operating Agreement, and the parties have demonstrated that they are unwilling to negotiate this point.

**IT IS THEREFORE ORDERED** that the parties show cause in writing, no later than April 15, 2011, why this matter should not be remanded to the Arbitrator for

clarification, based on the principles enunciated in Nukem, Inc., 400 F.3d at 836. No replies to the responses to this *Order* will be permitted.

    **SO ORDERED** this 5th day of April, 2011, in Albuquerque, New Mexico.

 

_____
M. CHRISTINA ARMIJO
United States District Judge