IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MARK F. BEVAN, M.D.**, in his individual
capacity and as a managing member of **TRC-
FOUR CORNERS DIALYSIS CLINICS, LLC**,
a New Mexico limited liability company,

        Plaintiff,

v.                                                                           Civ. No. 08-281 MCA/CG

**DAVITA, INC.**, a Delaware corporation,
f/k/a **TOTAL RENAL CARE, INC.**,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Motion For Confirmation Of Arbitration Award* [Doc 56], *Motion To Confirm And Enforce Arbitration Award* [Doc 57], and *Dr. Bevan's Motion To Enforce Arbitrator's Order Or For Preliminary Injunctive Relief* [Doc 73]. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the *Motions* to confirm, to the extent that the Arbitrator's decision will be entered as judgment in this case. Based on the same premises, the Court denies in part and denies as moot in part Dr. Bevan's motion to enforce or for preliminary injunctive relief.

**I.     BACKGROUND**

Plaintiff, Dr. Bevan, and Defendant, DaVita, Inc. (DaVita), have been joint venture partners since 1999, providing dialysis services to the Four Corners area. The parties own seven dialysis clinics, all of which are managed by DaVita. At some point during the relationship, a dispute arose as to ownership and control of the venture, the facilities, and the clinics. A law suit was filed, which was removed to this Court in March 2008. [Doc 1] On January 23, 2009, this Court entered a *Memorandum Opinion And Order*, granting Dr. Bevan's motion to compel arbitration. [Doc 37]

The case before this Court was stayed, and the parties pursued arbitration, which took place in June 2010. The Arbitrator issued his written decision as to liability on July 26, 2010 and found primarily for Dr. Bevan. The award provided for a financial award to Dr. Bevan, as well as equitable remedies. The Arbitrator followed the liability decision with a further award of attorney fees, issued on September 23, 2010.

During the time that the arbitration was pending and afterward, the parties filed joint status reports, apprising this Court of the parties' progress. In December 2010, the parties informed the Court that the Arbitrator had issued his awards, and that a motion for confirmation of the award "may" be forthcoming. A similar report was filed in February 2011. On March 17, 2011, the Court ordered the parties to file either a motion to confirm the award or "a motion to indicate the next course of action to be taken in the matter," no later than March 31, 2011. On that date, both parties filed separate motions to confirm the arbitration award and provided diverging rationales for confirmation.

The primary source of contention appears to be whether Dr. Bevan should receive his 44% share of Durango Dialysis Center subject to the terms and restrictions set forth in the Joint Venture Operating Agreement, which provides for "the terms and conditions governing the formation, structure, governance, operation and management of the Company . . . ."  [Doc 56-1 at 2]  DaVita maintains that the Arbitrator intended for Dr. Bevan to accept a 44% interest in the Durango facility "under the current agreement governing operation and management of the facility."  [Doc 57 at 9]  For support, DaVita points to the *Decision Of The Arbitrator*, in which the Arbitrator exercised his "equitable powers to limit the interest which Dr. Bevan may obtain in the Durango acute facility to no more than 44% of the total, which maintains Dr. Saddler's 5% interest and maintains DaVita's control."  [Doc 56-2 at 5]  The Arbitrator continued to state that he was "convinced that such preservation as to the governance of this facility is in the interest of the patients in the Durango chronic facility."  [Id.]

To that end, DaVita prepared a "Transfer Agreement," which purported to memorialize the transfer of the 44% share awarded by the Arbitrator.  The proposed Transfer Agreement sets forth terms for the transfer of interest, the "ownership of the entire record and beneficial interest of the Company," limitations on Dr. Bevan's rights, and a "Joinder To Operating Agreement."   [Doc 57-3 at 2-7]  The Joinder to Operating Agreement requires Dr. Bevan to agree and guarantee that he will "abide by the terms of and conditions of the [Operating] Agreement. . . ."  [Id. at 7]

In a letter to DaVita concerning the proposed Transfer Agreement, Dr. Bevan

disagreed with DaVita's interpretation of the Arbitrator's decision.  Dr. Bevan stated that "[t]he Arbitrator did not order Dr. Bevan to execute a joinder to the Durango Dialysis Clinic, LLC Agreement to effect this transfer [of interest because the] Durango Operating Agreement contains provisions which are incompatible with Dr. Bevan's receipt of his interest through DaVita."  [Doc 57-3 at 2]  Dr. Bevan continued in the letter to specifically object to the application of nine specific sections of the Operating Agreement to his 44% interest because he was "not bound under the terms of the Arbitrator's decision by the terms of the Durango Operating Agreement . . . ."  [Id. at 3-4]

In response to this seeming disagreement between the parties, this Court issued an *Order To Show Cause* [Doc 59], requiring the parties to show cause why the single narrow question should not be remanded to the arbitrator for clarification.  In response, DaVita argued that the Arbitrator's award is not ambiguous.  Dr. Bevan, however, not only agreed that the issue should be remanded, but raised an additional five questions, which he argues require "clarification" from the Arbitrator.  [Doc 67 at 1-4]  While the confirmation motions were pending, Dr. Bevan also filed *Dr. Bevan's Motion To Enforce Arbitrator's Order Or For Preliminary Injunctive Relief* [Doc 73].

**II.    ANALYSIS**

The Federal Arbitration Act (FAA) carries a "statutory policy of rapid and unobstructed enforcement of arbitration agreements."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23 (1983).  Section 9 of the FAA permits the district court to confirm an arbitration award if "the parties in their agreement have agreed that a

judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. The parties face two jurisdictional hurdles before this Court may enforce an arbitration award. See P&P Indus., Inc. v. Sutter Corp., 179 F.3d 861, 866 (10th Cir. 1999). *First*, the parties must demonstrate subject matter jurisdiction independent from the FAA. Id. There is no dispute that the amount in controversy exceeds the jurisdictional amount or that there is complete diversity of citizenship between the parties who are currently before the Court. Accordingly, this Court has diversity jurisdiction over the matter.

*Second*, this Court must have authority under the FAA, Section 9 specifically, to enforce the arbitration award. Id. "[A] district court has no power to confirm an arbitration award under § 9 of the FAA unless the parties have agreed, explicitly or implicitly, that any eventual arbitration award shall be subject to judicial confirmation." P& P Indus., Inc., 179 F.3d at 866. Again, there is no dispute that the Operating Agreement between the parties includes the following clause: "The party in whose favor the award is made may apply to any court with jurisdiction for confirmation and entry of judgment in conformity with the award." [Doc 56-1 at 13] Accordingly, this Court has jurisdiction to confirm the arbitration award.

Both parties have requested that this Court confirm the Arbitrator's award. Their motions to confirm made apparent, however, that the parties continue to dispute the issues, even after arbitration. Dr. Bevan raises six issues, which he argues require clarification from the arbitrator. As noted earlier, the initial point of contention concerns

the Arbitrator's award to Dr. Bevan of a 44% interest in the Durango Joint Venture.  Dr. Bevan argues that he should take the interest as DaVita held it, and DaVita maintains that the ownership interest is subject to the Operating Agreement that governs the Durango Joint Venture.  Dr. Bevan raises five additional issues, including:

> (1)  Whether DaVita may, in light of the Arbitrator's September 7, 2010 order that "Until such time as DaVita keeps all Joint Venture funds in separate accounts titled to the Joint Venture, DaVita shall pay to the Company going forward all interest earned on all company funds, which is to be calculated at a rate of prime plus 1%, and that Dr. Bevan shall be entitled to his share of that interest as it accrues," require Dr. Bevan to amend the Joint Venture Operating Agreement.
>
> . . .
>
> (2)  Whether DaVita has sought to improperly invoke the deadlock mechanism set forth in the Decision of the Arbitrator, Ex. 2 to Dr. Bevan's Motion for Confirmation of Arbitration Award [Doc. no. 56], in a way so as to deprive Dr. Bevan and his medical practice, Four Corners Nephrology Associates ("FCNA"), of all the medical directorships at the Four Corners Joint Venture dialysis centers.
>
> . . .
>
> (3)  Whether the Decision of the Arbitrator concerning the Cortez dialysis center medical directorship voids the existing Medical Director Agreement for the Joint Venture's Cortez facility.
>
> (4)  Whether the Decision of the Arbitrator concerning governance issues required DaVita to conform the facilities' by-laws and the Policy and Procedure manuals of the Joint Venture to be consistent with the arbitration decision.
>
> (5)  Whether DaVita has complied or failed to comply with the Stipulated Order for Appraisal of the Acute Programs entered by the Arbitrator on September 7, 2010.

[Doc 67 at 1-4]  DaVita contends that the award should be confirmed and enforced and that no further clarification is required.  The Court will first considers whether the Arbitrator's award should be confirmed or remanded, and will then turn to DaVita's motion to enforce the award, and will then finally evaluate Dr. Bevan's motion for enforcement or preliminary injunction.

**A.     Remand and Confirmation**

In cases where an ambiguity exists as to the award's terms, "[c]ourts have uniformly stated that a remand to the arbitration panel is appropriate."  U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830-31 (10th Cir. 2005) (internal quotation marks and citation omitted) (Nukem, Inc.); Thomas H. Oehmke, Commercial Arbitration, § 126:1 *Post-award clarification, correction or modification* (November 2010) ("Even though the FAA is silent about remanding an arbitration award for clarification (as opposed to modification or correction), courts have seen such an option as the exercise of their equitable powers."). Remand to the arbitrator, however, "is to be attempted sparingly in order not to thwart the interest of achieving finality."  Nukem, Inc., 400 F.3d at 831 (internal quotation marks and citation omitted).

This Court finds that the Arbitrator's decision clearly awards Dr. Bevan a 44% share of the Durango Joint Venture, clearly vests management control of the Joint Venture with DaVita, and as explained below, clearly intends for the ownership award to be taken pursuant to the Operating Agreement.  The remaining issues that Dr. Bevan presents for "clarification" are truly either issues relating to implementation of, or

compliance with, the arbitration award. The parties did not agree to submit compliance and enforcement issues to the arbitrator. See Ottley v. Schwartzberg, 819 F.2d 373, 376 (2nd Cir. 1987) ("Allowing the remand in this case would require the arbitrator to pass upon issues of compliance which were not within the scope of the matters originally presented to him." (internal quotation marks and citation omitted)). Because I conclude that the Arbitrator's decision is not ambiguous and because the remaining issues are matters of enforcement or compliance, remand is not appropriate. Domino Group, Inc. v. Charlie Parker Mem'l Found., 985 F.2d 417, 421, n.2 (8th Cir. 1993) ("We note that issues of compliance with an arbitration award typically are not submitted to the arbitrator.").

**B.**     **Enforcement**

Turning to the enforcement question, DaVita argues that Dr. Bevan must take his 44% interest of the Durango facility pursuant to the Operating Agreement that governs that facility. This Court has confirmed the arbitrator's award, and it will be docketed as if entered by this Court. 9 U.S.C. § 13 ("The judgment shall be docketed as if it was rendered in an action."). As such, "[t]he judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." Id.

In his decision, the Arbitrator explained that DaVita breached its fiduciary duty by partnering with Dr. Saddler and unfairly excluding Dr. Bevan from the opportunity to

participate in the Durango unit.  The Arbitrator determined that this deal disadvantaged Dr. Bevan, while at the same time giving DaVita the advantage of a 95% ownership interest in the Durango unit—as opposed to a 50 or 51% interest that it would have had in a deal with Dr. Bevan.  As a result, the Arbitrator awarded Dr. Bevan the 44% interest in the Durango chronic facility.  Dr. Bevan argues that he should take this interest as DaVita possessed it—but that would not have been how he would have received the interest had DaVita not breached its fiduciary duty.  Instead, Dr. Bevan would have been in place of Dr. Saddler, as the party contracting with DaVita.

The Arbitrator clearly intended for Dr. Bevan to be made whole for DaVita's breach of fiduciary duty:  "These distributions represent income from ownership which Dr. Bevan would have acquired if permitted to be involved as an owner of the Durango chronic facility and if DaVita had timely disclosed its participation in the transaction and not breached its fiduciary duty to Dr. Bevan."  As such, Dr. Bevan takes his 44% interest as Dr. Saddler received his 5% interest—subject to the Operating Agreement.

**C.**     **Preliminary Injunction**

During the time that the motions to confirm have been pending, Dr. Bevan filed *Dr. Bevan's Motion To Enforce Arbitrator's Order Or For Preliminary Injunctive Relief* [Doc 73].  In that *Motion*, Dr. Bevan argues that DaVita should be enjoined from taking any action on the Arbitrator's award until the question of remand is addressed by this Court.  This Court has concluded that questions concerning the deadlock mechanism are not proper issues for remand.  Accordingly, the *Motion* is rendered moot in this regard.

Dr. Bevan also contends that "DaVita's conduct in the past two months is a breach of the terms of the Operating Agreement, violates the terms of the Arbitrator's Decision, and is a breach of DaVita's fiduciary duties to Dr. Bevan." [Doc 73 at 11]  To the extent that Dr. Bevan intends to challenge DaVita's fiduciary conduct or argue that it acted contrary to the Operating Agreement, as noted by this Court's January 23, 2009, *Memorandum Opinion And Order* [Doc 37], the arbitration clause to which the parties agreed "includes disputes that arise under the joint venture relationship established by the Operating Agreement."  These issues must therefore be taken up in binding arbitration, pursuant to the arbitration clause in the Operating Agreement.

The decision of the Arbitrator has been confirmed by this Court, which accordingly considers that decision as its own.  In arbitration, the selection of the medical directorship was in contention.  In resolving the dispute, the Arbitrator concluded that "the Board of Managers is the entity which decides who should be the medical director of the Joint Venture chronic facilities including Cortez, Four Corners (Farmington) Tuba City, Chinle, and Shiprock and Kayenta."  Further,

> In the event of a deadlock within the two-member Board of Managers on a particular issue, each member will, within ten calendar days of reaching the deadlock, designate an individual to serve on the Board of Managers solely to break the tie on the deadlocked issue.  If the two members of the Board of Managers cannot agree within a further ten calendar days on one of the nominees, the two nominees will cut cards and the nominee with the highest card will sit on the Board of Managers solely to vote on the deadlocked issue.

Dr. Bevan sets forth the following facts to argue that DaVita has violated this

portion of the Arbitrator's decision.  In August 2010, one month after the decision was issued, DaVita informed Dr. Bevan that absent an agreement permitting Blue Sky Nephrology to remain the Medical Director of the Cortez facility, DaVita would invoke the deadlock procedure set forth in the Arbitrator's decision.  This "threat" was repeated in September 2010.  No further action was taken until April 2011, when DaVita gave Dr. Bevan notice of a Board of Managers meeting, at which it intended to seek a vote on the medical director question.  That meeting was proposed for May 4, 2011.  Dr. Bevan objected to the meeting, and the parties—and their attorneys—exchanged a great deal of correspondence on the subject.  Dr. Bevan did not attend the May 4, 2011 meeting.  DaVita held the meeting in his absence and asserted that the parties "deadlocked" on the medical directorship issue—because DaVita proposed BlueSky Nephrology as the medical director.

Dr. Bevan argues that this meeting and procedure violated the Arbitrator's decision, because the deadlock was created by DaVita acting unilaterally.  DaVita responds that by refusing to attend the May 4, 2011 meeting, Dr. Bevan himself obstructed the enforcement of the Arbitrator's decision.  Indeed, examining DaVita's behavior in light of the Arbitrator's decision, the Court does not find a violation of the decision.  DaVita acted in accordance with the decision by giving notice of the meeting and implementing the deadlock procedure.  For this reason, Dr. Bevan's motion to enforce the arbitration agreement is denied.

Nevertheless, Dr. Bevan requested that this Court remand to the Arbitrator issues

specific to the deadlock procedure. While that request was pending with this court, DaVita attempted to initiate the process of appointing a medical director at the Cortez facility. Dr. Bevan's refusal to participate could be viewed as prudent, considering the pendency of the remand issue.

## III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Dr. Bevan's *Motion For Confirmation Of Arbitration Award* [Doc 56] and DaVita's *Motion To Confirm And Enforce Arbitration Award* [Doc 57] are granted to the extent that the Court confirms the award of the Arbitrator and judgment is entered pursuant to its terms.

**IT IS FURTHER ORDERED** that *Dr. Bevan's Motion To Enforce Arbitrator's Order Or For Preliminary Injunctive Relief* [Doc 73] is **DENIED IN PART AS MOOT** and is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that the Board of Managers shall meet within 14 days of the entry of this *Order* in order to vote on the Cortez medical directorship and that in the event of a deadlock, the parties proceed with the deadlock procedure outlined by the Arbitrator's decision.

**SO ORDERED** this 30th day of June, 2011, in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge